UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PRESTON EXPLORATION CO., et al, | § § § | |
| Plaintiffs, | § | |
| VS. | § § | CIVIL ACTION NO. H-08-3341 |
| CHESAPEAKE ENERGY CORP., et al, | § § § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Before the Court are Defendants Chesapeake Energy Corporation and GSF LLC's (collectively "Chesapeake") Motion for Summary Judgment (Docket Entry ("Doc.") No. 13), and Plaintiffs Preston Exploration Company, L.P., PEC Partnership, T.S.C. Oil & Gas, Inc., and Frank Willis, III's (collectively "Preston") Motion for Summary Judgment (Doc. 19), and all responses and replies thereto. After reviewing the Motions, all related filings, and the relevant law, the Court finds, for the reasons discussed below, that Plaintiffs' Motion for Summary Judgment should be denied, and Defendants' Motion for Summary Judgment should be granted.

## I. FACTUAL BACKGROUND

This is a dispute regarding an agreement to assign certain oil and gas leases. In June, 2008, Chesapeake's CEO, Aubrey McClendon, approached Preston proposing to purchase oil and gas leases covering roughly 6,600 acres of land owned by Preston in Harrison and Panola Counties, Texas. After some negotiation, the parties reached an agreement. Both sides signed purchase and sale agreements ("PSAs") covering the leases, and Chesapeake paid a deposit. The PSAs, executed on October 8, 2008, contemplated a $99 million purchase price and a November 7, 2008 closing date.[1]

---

[1] More detail regarding the language of the PSAs is included in the Court's analysis below.

On November 3, Chesapeake inquired whether Preston would accept part of the purchase price in cash and part in Chesapeake stock. Preston responded that it would not, and moved forward with preparations for closing. On November 6, 2008, Chesapeake informed Preston that it would not attend the closing, which it did not. Preston brought this lawsuit alleging breach of contract and seeking specific performance of the PSAs. Preston and Chesapeake both seek summary judgment on Preston's claim for specific performance. Preston seeks summary judgment on Chesapeake's counterclaim to recover the down payment. Chesapeake argues that the PSAs are unenforceable because the property descriptions do not satisfy the statute of frauds.

## II. LEGAL STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. FED. R. CIV. P. 56(e)(1); *see e.g., McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied

with 'some metaphysical doubt as to the material facts.'" (citing *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986))).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id.*

### III. ANALYSIS

#### A. Statute of Frauds—Generally

In Texas, the statute of frauds requires conveyances of real property, including oil and gas leases, to be in writing and signed by the party to be charged with performance. TEX. BUS. & COM. CODE ANN. § 26.01(b)(4) (Vernon Supp. 2007); *Longs Trusts. v. Griffin*, 222 S.W.3d 412, 416 (Tex. 2006). In order to comply with the statute of frauds, a contract purporting to sell or assign oil and gas leases "must furnish within itself, or by reference to some other existing writing, the means or data by which the [property] to be conveyed may be identified with reasonable certainty." *Id.* "Extrinsic evidence may be used only for the purpose of identifying the [property] with reasonable certainty from the data contained in the contract, not for the purpose of supplying the location or description of the [property]." *Id.* (internal quotations omitted). Surveys, public records, and other documents can only be considered if they are referenced in the contract. *See Reiland v. Patrick Thomas Properties, Inc.*, 213 S.W.3d 431, 437-38 (Tex. App.—Houston [1st Dist.] 2006). "A description's validity under the statute of frauds is not affected by the knowledge or intent of the parties." *Fears v. Tex. Bank*, 247 S.W.3d

3

729, 736 (Tex. App.—Texarkana 2008). This is true even where it is clear that the parties knew what property they were intending to convey. *See Reiland*, 213 S.W.3d at 437. An agreement to convey real property is not enforceable by specific performance or damages unless it complies with the statute of frauds. *Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001).

## B. Application of the Statute of Frauds

Chesapeake argues that the PSAs do not comply with the statute of frauds because they "fail to identify the oil and gas interests with reasonable certainty." (Doc. No. 13 at 1.) The PSAs define the "Property to be Sold" as:

> All of Seller's right, title and interest in and to all oil and gas leases, including renewals, extensions, ratifications and amendments to such leases, and further including working interests, rights of assignment and reassignment, and interests in rights to explore for and produce oil, gas, or other minerals INSOFAR AND ONLY INSOFAR as such oil and gas leases and rights, titles and interests therein cover those intervals, formations, strata and depths located below the stratigraphic equivalent of the base of the Cotton Valley sand and the top of the Bossier Shale formation as such oil and gas leases are described and as such depth is defined in Exhibit "A", attached and made a part hereof, such oil and gas leases and other rights, titles and interests therein as so depth limited being hereinafter referred to as the "Leases" or in some cases "Lease" if the context requires.

(Doc. No. 13, Exs. A-C.) Exhibit A to each of the three PSAs is a chart summarizing information about the leaseholds. It identifies the "Prospect" containing each leasehold, has rows for each leasehold and columns identified with the headings "Lease Name," "Lessee," "Eff. Date," "Gross Acres," "Net Acres," "Royalty," "ORRI," "NRI to be Conveyed," and "Value of Net Acre."

While the above-quoted section is intended generally to outline the leaseholds to be conveyed, the PSAs exclude specific wells from the transaction and also exclude any leaseholds with title defects. (Doc. No. 13, Exs. A-C, § 6(d)). The PSAs contemplate that, between the time of execution and the time of closing, Chesapeake would conduct title surveys, notify

4

Preston of any title defects, and allow Preston to cure any defects. (*Id.* at § 6). Any leaseholds with defects that were not cured before closing would not be conveyed at closing, and the price would be adjusted accordingly. (*Id.*). The PSAs state that the leaseholds to be conveyed at closing would be described in separate Assignments, which the seller would deliver at closing. (*Id.* at § 8(b)(i)). The form for the assignments is attached to the PSAs. (*Id.*). The language in the form mirrors the language from the PSAs and states that the leasehold to be assigned "is defined in Exhibit 'A.'" (Doc. No. 13, Exs. A-C.) There is no Exhibit "A" attached to the Assignment. Chesapeake delivered notices of title defects to Preston, to which Preston responded. (Doc. No. 19 at 7.) However, since the closing never occurred, the final versions of the Assignments, with Exhibit A attached, were never delivered to or signed by Chesapeake.

Without Exhibit A to the Assignments, the PSAs and Assignments, taken together, do not comply with the statute of frauds. The descriptions of the property contained in Exhibit A to the PSAs do not sufficiently identify the leaseholds with certainty. *See Long Trusts v. Griffin*, 222 S.W.3d 412 (Tex. 2006) (finding that language similar to that included in the PSAs did not comply with the statute of frauds). Moreover, the Assignments make clear that the leasehold to be assigned is defined in various Exhibits "A," which were never attached or signed by Chesapeake. Without knowing what expansions or limitations are included in the exhibits, it is impossible to identify the leaseholds with certainty. Absent an applicable exception, the PSAs are not enforceable.

Preston's presentation of extrinsic evidence—including affidavit testimony, correspondence between the parties, and maps—does not change this conclusion. The statute of frauds requires the land description to be written in the contract regardless of an actual mutual understanding of the property descriptions. While extrinsic evidence can be used to explain

terms included in the contract, it cannot be used to supply missing terms. *See Wilson v. Fisher*, 188 S.W.2d 150, 152 (Tex. 1945). An adequate description of the land is not included in the contract, and extrinsic evidence cannot cure this defect.

**C. Application of an Exception to the Statute of Frauds**

Preston argues that, even if the PSAs do not comply with the statute of frauds, it is still entitled to specific performance on the basis of either the partial performance or promissory estoppel exceptions to the statute of frauds. Alternatively, Preston argues that it is entitled to reformation of the contract.

**1. Partial Performance**

The partial performance exception to the statute of frauds allows for equitable enforcement of a contract that otherwise fails to comply with the statute of frauds when the contract has been partly performed and denial of enforcement would amount to a virtual fraud. *See CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 276 (5th Cir. 2009); *Exxon Corp. v. Breezvale Ltd.*, 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, pet. denied). "The fraud arises when there is strong evidence establishing the existence of an agreement and its terms, the party acting in reliance on the contract has suffered a substantial detriment for which he has no adequate remedy, and the other party, if permitted to plead the statute, would reap an unearned benefit." *Exxon Corp.*, 82 S.W.3d at 439. The partial performance must be "unequivocally referable to the agreement and corroborative of the fact that a contract actually was made." *Id.* "The acts of performance relied upon to take a parol contract out of the statute of frauds must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced; otherwise, they do not tend to prove the existence of the parol agreement relied upon by the plaintiff." *Id.*

6

Preston argues that Chesapeake partly performed the contract by paying a 10% deposit and asserting title defects. These actions do not support an application of the partial performance exception because they do not indicate an unequivocal intent to "fulfill the particular agreement sought to be enforced." *Exxon Corp.*, 82 S.W.3d at 439. Chesapeake's investigation of title defects is more consistent with the performance of standard due diligence, and its payment of the down payment is akin to earnest money paid to a seller as an indication that the buyer is serious about negotiations. Chesapeake never paid the full purchase price, took possession of the leaseholds, or made improvements indicating the existence of a contract. These are the typical indicia of partial performance, and all are absent here. *See Chambers v. Pruitt*, 241 S.W.3d 679, 687 (Tex. App.—Dallas 2007, no pet.) (citing *Hooks v. Bridgewater*, 229 S.W. 1114 (Tex. 1921)).

The partial performance exception also requires a showing that a refusal to enforce the contract would result in virtual fraud. Preston argues that, during the time it was negotiating with Chesapeake, the market value of the leaseholds dropped substantially, and that Preston is no longer able to sell them at a price remotely close the price it was negotiating with Chesapeake. (Doc. 19 at 14.) An unfavorable change in the market price beyond the control of either party does not amount to fraud. A change in market price is a risk that all market participants assume. In this case, the change in price negatively affected Preston. However, under different circumstances beyond either of the parties' control, the change in market price could have so affected Chesapeake. Application of the partial performance exception depends on the actions of the parties, not the actions of the market, and it is not applicable here.

**2. Promissory Estoppel**

7

Preston alternatively argues that the PSAs should be enforced pursuant to the promissory estoppel exception to the statute of frauds. In order to establish the applicability of the promissory estoppel exception, Preston must show that: (1) Chesapeake promised to sign an agreement then in existence that complied with the statute of frauds; (2) Chesapeake should have expected its promise to induce Preston to take action or forbear from taking actions; (3) the promise actually did induce action or forbearance; (4) the action or forbearance was of a definite and substantial character; and (5) injustice to Preston can be avoided only by enforcing the promise. *Birenbaum v. Option Care, Inc.*, 971 S.W.2d 497, 504 (Tex. App.—Dallas 1997, no pet.). Preston cannot show the first requirement.

In order to establish the first element listed above, Preston must show that Chesapeake promised to "sign a document that had already been prepared or 'whose wording had been agreed upon' that would satisfy the statute of frauds. A mere promise to prepare a written contract is not sufficient." *1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 29 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *Beta Drilling, Inc. v. Durkee*, 821 S.W.2d 739, 741 (Tex. App.—Houston [14th Dist.] 1992, writ denied)). Preston argues that the Assignments satisfied the statute of frauds and that Chesapeake promised to sign them at closing when it signed the PSAs. However, Chesapeake only agreed to the form of the assignment, not the actual Assignments. Chesapeake could not have agreed to the actual Assignments at the time it signed the PSAs because it had not yet conducted the title investigations. At the time the form for the Assignments was agreed to, the leaseholds to be assigned had not yet been determined. Since the form attached to the PSAs did not include property descriptions, it did not meet the requirements of the statute of frauds. Accordingly, Chesapeake's promise was, at best, a promise to sign a contract that would be prepared at some

time before closing. Accordingly, the first element of the promissory estoppel exception has not been met, and the exception is inapplicable.

### 3. Reformation

Preston finally argues that it is entitled to reformation of the contract. Reformation is intended to correct a mutual mistake made in preparing a written instrument so that the instrument reflects the original agreement of the parties. *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 380 (Tex. 1987). A party seeking reformation must show "an original agreement and a mutual mistake, made *after* the original agreement, in reducing the original agreement to writing." *Id.* at 379. Preston argues that it and Chesapeake believed that the property descriptions in the PSAs were sufficient to describe the leaseholds, and that the Court should supply the missing information. The PSAs indicate otherwise. The PSAs outline a general understanding regarding the property to be transferred. However, they explicitly state that a more specific property description would be supplied after further investigation of title defects. Moreover, the PSAs contemplate a possible adjustment in the price pending the cure of title defects. The PSAs accurately represent what the parties had agreed to at the time they were written. The agreement was a general one, the specific terms of which were to be spelled out at a later time. Because the PSAs accurately represented the parties' agreement at the time they were drafted, Preston is not entitled to reformation.

### D. Money Had and Received

Preston seeks summary judgment on Chesapeake's counterclaim seeking recovery of its 10% down payment. Chesapeake seeks recovery of the payment under the equitable theory of "money had and received." The claim is essentially one for unjust enrichment. Preston argues that Chesapeake cannot assert an equitable claim when there is a contract governing the deposit.

However, the Court has already held that the PSAs are unenforceable. Accordingly, the Court can consider the equitable remedy.

Preston further argues that Chesapeake cannot equitably recover the deposit because (1) the deposit does not belong to Chesapeake since the PSAs allowed for its return only in certain circumstances, (2) Chesapeake has unclean hands, and (3) Chesapeake voluntarily paid the money to Preston pursuant to the PSAs. The first and third arguments depend on an interpretation of an unenforceable contract, and accordingly they do not protect Preston from Chesapeake's claim.

Preston's argument regarding unclean hands is its strongest, but it still fails to meet the summary judgment standard. The doctrine of unclean hands will prevent a party from recovering under an unjust enrichment theory, but there must be some evidence that the party seeking recovery acted unfairly. *Texas Bank & Trust Co. v. Custom Leasing, Inc.*, 498 S.W.2d 243, 251 (Tex. App.—Tyler 1973), *rev'd on other grounds*, 516 S.W.2d 38 (Tex. 1974). The only evidence presented by Preston in favor of this argument is that "Chesapeake repudiated the agreements, without legal or contractual justification, prior to closing." (Doc. No. 19 at 25). However, because the PSAs were not enforceable at the time Chesapeake decided not to move forward with closing, Chesapeake did have legal justification for repudiating. Preston's evidence is not sufficient to show that Chesapeake acted unfairly. Accordingly, it is not entitled to summary judgment.

## IV. CONCLUSION

Chesapeake's Motion for Summary Judgment (Doc. No. 13) is **GRANTED**, and Preston's claim for specific performance is **DISMISSED WITH PREJUDICE**. Preston's Motion for Summary Judgment (Doc. No. 19) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** this 3rd day of November, 2009.

                                                    KEITH P. ELLISON
                                                  UNITED STATES DISTRICT JUDGE