UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PRESTON EXPLORATION CO., et al, | § | |
| | § | |
|     Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. H-08-3341 |
| | § | |
| CHESAPEAKE ENERGY CORP., et al, | § | |
| | § | |
|     Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is the Motion to Alter or Amend this Court's Memorandum and Order granting in part Plaintiffs Preston Exploration Company, L.P., PEC Partnership, T.S.C. Oil & Gas, Inc., and Frank Willis, III's (collectively "Preston") motion to alter or amend (the "Order") (Doc. No. 93) of Defendants Chesapeake Energy Corporation and GSF LLC's (collectively "Chesapeake") (Doc. No. 96). This Court will also consider Chesapeake's Motion for Certificate of Appealability (Doc. No. 98). For the following reasons Chesapeake's Motions must be denied.

**I.   MOTION TO AMEND**

A detailed factual background of this case is set forth in the Order, and will not be reproduced here. On November 3, 2009, this Court issued an Order granting Chesapeake summary judgment on Preston's claim for specific performance and holding that the Purchase and Sale Agreements for the oil and gas leases at issue ("PSAs") were unenforceable and violative of the statute of frauds (Doc. No. 44) (the "November Order"). Subsequently, after considering Preston's motion to amend the November Order, this Court reversed its position and found that a fact issue remained as to whether the exhibits to the Assignments, including the recording information therein, constituted

1

part of the agreement reached by the parties. Chesapeake now argues that this Court "committed a manifest error of law in abandoning its prior [November Order] and determining that the parties' agreement should extend beyond the four corners of the signed PSAs to include [A]ssignment exhibits that were neither signed by the parties nor attached as part of the PSAs." (Def. Mot., Doc. No. 96, at 2.)

### A. Legal Standard

A motion to alter or amend judgment is governed by Federal Rule of Civil Procedure 59(e). *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004). Such a motion must "clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). In considering a motion for reconsideration, a court "must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).

### B. Chesapeake's Additional Facts

Chesapeake offers several additional facts demonstrating that the parties never intended the Assignment exhibits to be part of their agreement and that, when signing the PSAs, the parties did not in fact know what leases would be conveyed at closing. The additional information provided by Chesapeake, however, goes precisely to the fact issue that the Court identified in its Order. Notably, the Court did not definitively hold that the Assignment exhibits were part of the agreement reached by the parties, but only that they

2

were not *per se* excluded from the contracts simply because they were not physically connected to the signature page of the PSAs. (Order at 11.) This Court's analysis on whether, as a matter of law, the Assignment Exhibits were relevant to the enforceability of the PSAs was explicitly made subject to a necessary factual determination as to whether the parties understood these Assignments exhibits to be finalized and part of the terms to which they were agreeing when they signed their names to the PSAs. The Court fully acknowledged that it was not in a position to conclusively determine this issue on the basis of the evidence before it.

In its Motion, Chesapeake brings forth persuasive factual evidence that the parties did not intend for the Assignment exhibits to be part of their agreement because they anticipated that these exhibits might change before they were formally executed at closing, and because there was no mention of these exhibits when the executed PSAs were finally emailed. Preston, on the other hand, submitted evidence that the Assignment exhibits had been fully agreed upon and were no longer subject to negotiation at the point at which Chesapeake agreed to purchase the leases in question. This factual dispute should be tried before a fact-finder to allow this Court to make an informed assessment of whether, under the facts of this case, the exhibits with the recording information can be considered part of the agreement reached by the parties.

**C.     "Manifest Errors of Law" under Texas Precedent**

As to Chesapeake's argument that this court disregarded "over a hundred years of Texas jurisprudence" in determining that the PSAs could (not should) be supplemented with unsigned Assignment exhibits, the Court first and foremost points out that Chesapeake gives this Court's Order entirely too much credit. It was certainly not the

3

intention of this Court to upset hundreds of years of statute of frauds jurisprudence.[1] After its initial determination in the November Order, the Court's change in position was only an acknowledgement that there were compelling facts demonstrating that the PSAs, as submitted to this Court, may not, in fact, represent the full scope of the negotiations and agreement reached by the parties. The extent to which this Court's holding is intimately linked to the facts of this particular case deserves emphasis. As such, the conclusions reached by this Court should not be extended any further than this unique factual scenario would allow.

### 1. Factual Distinctions from Cited Cases

Indeed, the facts presented in this case are notably distinct from the facts of the cases to which Chesapeake cites, opining on whether separate documents can constitute one memorandum. For example, in *Owen v. Hendricks*, 433 S.W.2d 164, 167 (Tex. 1968), the court, presented with two separate letters which, aside from their subject matter, did not appear from their content to have any connection, declined to read these letters together. The court there expressed a concern about the possible "fabrication" of an unsigned document that is not referred to in a signed memorandum.[2] *Id.* In *Gruss v. Cummins*, 329 S.W.2d 496, 502 (Tex. Civ. App.—El Paso 1959, writ ref'd n.r.e.), the court rejected reading thirty letters, telegrams, and other documents into a contract that was otherwise unenforceable under the statute of frauds, holding that "the connection

---

[1] While the Court's Order did, to be sure, cite cases in numerous jurisdictions, including Texas, when discussing the legal significance of the Assignment exhibits, it did not explicitly rely on any one of these decisions in its finding.

[2] Although Chesapeake questions this Court's reliance on policy considerations in reaching its conclusion, Texas law concerning the statute of frauds is largely based on policy considerations as well. *See Owen*, 433 S.W.2d at 166-67 (Tex. 1968). This comes as no surprise considering, as the Court repeatedly noted in its Order, that the statute of frauds was founded on practical concerns surrounding conveyance of real property.

between such instruments must be evident from the writing itself." Finally, in *Alattar v. Ganim*, 2010 WL 547032, at *6-7 (Tex. Civ. App.—Houston [14 Dist.] Feb. 18, 2010), the most recent case on which Chesapeake relies, the court overturned a jury decision finding that six separate writings did in fact constitute the full agreement reached by the parties. In so holding, the court looked to each of the six documents to determine whether it made reference to each of the other five. *Id*. The documents were of varying types and degrees of formality, were generated at different times, and were thus wholly separate from one another.[3]

This Court continues to hold that the facts of this case are materially distinct from the facts in the cases discussed above, and compellingly demonstrate that the Assignment exhibits need not be excluded as a matter of law from the parties' agreement. Factual questions do, however, remain as to their finality and the degree of consensus reached as to their content. This Court held that the PSAs as executed were deficient under the statute of frauds because the exhibits did not include the recording information necessary to fully describe the location of the leases to be conveyed. Preston then brought forth evidence suggesting that the Assignment exhibits, which listed the same leases as in the PSA exhibits, and were materially identical to them except that they did include recording information for each of the leases being conveyed, were sent to Chesapeake immediately prior to Chesapeake signing the PSAs. Thus, the information provided in the Assignment exhibits corresponded directly to the very leases that Chesapeake agreed to purchase when it signed the PSAs. Indeed, these Assignment exhibits were sent the day

---

[3] That this question was initially presented for determination by a jury further emphasizes that this question is inextricably intertwined with the facts of a case.

before the initially scheduled closing date, when they too would have been signed had Chesapeake not requested that the closing date be postponed.

Unlike the cases cited by Chesapeake, then, this case does not involve a collection of letters or other informal writings, or a series of wholly separate documents, that must be read together. Rather, this Court is presented with several exhibits, all of which identify the leases that are to be conveyed, all allegedly negotiated and discussed between the parties, and all in Chesapeake's possession directly prior to agreeing to the PSAs. These Assignment exhibits were not, therefore, wholly separate parol documents that were unrelated to the negotiated agreement in every way but their subject matter, but rather, it appears, part and parcel of the "schedules and exhibits" being discussed and negotiated, and perhaps even agreed upon. Therefore, the facts of this case are easily distinguishable from those considered in the cases above.

### 2. Connecting the Assignment exhibits to the PSAs is consistent with Texas law.

Nonetheless, Chesapeake maintains that in even considering these facts, the Court improperly considers parol evidence to connect the Assignment exhibits to the PSAs, which is precisely what the statute of frauds forbids. (Def. Mot. at 9.) As an initial matter, the Court again notes that this factual evidence is relevant because it goes not only to the question of whether the Assignment exhibits can legally constitute part of the agreement between the parties, but also to the fact issue of whether these exhibits were finalized such that they can be recognized under contract law. The Court found that that the factual issues surrounding the Assignment exhibits, and, accordingly, a final determination as to whether the Assignment exhibits can constitute part of this contract, remain unresolved. However, the thrust of Chesapeake's objection appears to be that even if the factual

6

issues surrounding the Assignment exhibits were resolved, this Court cannot, as a matter of Texas law, use these facts to connect these Assignment exhibits to the PSAs.[4] The case law cited by Chesapeake holds that separate documents can be connected to form one memorandum, but only by their own contents. That is, the connection "must be apparent from a comparison of the writings themselves," as opposed to arising from circumstantial facts and parol evidence suggesting that the documents are connected. *Alattar*, 2010 WL 547032 at *5-6.

Consistent with this principle of Texas law, however, the exhibits to the Assignments were referenced in the Assignment form that was attached to the PSAs as executed, a fact explicitly recognized by this Court as early as its original November Order. (November Order at 5.) It is made abundantly clear in the writings that these Assignment exhibits describing the leases to be assigned either existed when the PSAs were executed, or would come into existence in the future. (Def. Mot. Summ. J. Ex. A, Doc. No. 13-1.) The Court did not, therefore, depart from "firmly-entrenched precedent," as Chesapeake suggests. True, these Assignment exhibits were not physically attached to the PSA when it was signed, but, as fully explained in this Court's Order, the Court cannot find that this lack of physical connection renders these Assignment exhibits per se excluded from the agreement. Chesapeake does not disagree on this point. Perhaps this Court should have been more explicit in its recognition that these Assignment exhibits were referenced within the writing that was eventually signed by both Chesapeake and Preston. Moreover, that the leases listed in the Assignment exhibits and the PSA exhibits are, according to Preston, materially identical, further demonstrates that the connection

---

[4] Indeed, Chesapeake clarifies in its Motion that it does not take the position that the relevant determination to what may be included in the contract is what is physically stapled together, but rather what is "plainly referred to" in the agreement. (Def. Mot. at 9 n.1.)

between these documents is evident from the contents of the writings themselves. The question that remains is whether these Assignment exhibits "existed", or were finalized such that their existence can be recognized by contract law, when the parties signed their names to the agreement, or whether they were subject to further negotiation such that the final Assignment exhibits had not yet come to be.

The Court understands that, among the varying applications of the statute of frauds employed by courts both within and outside of Texas, this Court has adopted a more flexible one, as it has chosen to focus on the statute's practical concerns rather than a formal application of the rule. The Court cannot ignore the wealth of facts in this case that makes the decision as to the enforceability of the PSAs an extremely difficult one, and for this reason, it has found that further exploration of the facts is warranted. In so holding, however, the Court does not believe that it has departed from entrenched legal precedent in Texas regarding the statute of frauds. All of the cases cited by Chesapeake confirm that there are instances where separate writings form a single agreement, and the Court is not convinced that such a situation does not exist here. Only further exploration of the facts will resolve the question with any certainty.

## II.   MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL

Chesapeake also moves to certify this Court's order for interlocutory appeal. More specifically, Chesapeake argues that this Court's holding as to the issue of "incorporation by association" warrants Fifth Circuit review prior to trial, because a ruling by the Fifth Circuit would "definitively resolve the statute of frauds defense, thus providing the parties with valuable information in evaluating their positions concerning trial and potential settlement in this case." (Def. Mot., Doc. No. 98, at 9.)

The final judgment rule states that "a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994); *see also Henry v. Lake Charles American Press, LLC*, 566 F.3d 164, 171 (5th Cir. 2009) (noting that "as a general rule, parties must litigate all issues in the trial court before appealing any one issue"). Nonetheless, 28 U.S.C. Section 1292(b) provides for interlocutory appeals of trial court decisions when such decisions (1) involve a controlling question of law (2) as to which there is substantial ground for difference of opinion and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). The Fifth Circuit has, in the past, reasoned that Section 1292(b) appeals are appropriate under only "exceptional" circumstances or in "big" cases. *Clark-Dietz and Associates-Engineers v. Basica Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983). However, in other cases, the Fifth Circuit has employed a more flexible approach to Section 1292(b) appeals. *See Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 702-03 (5th Cir. 1961) (finding that Section 1292 gave the appellate machinery "a considerable amount of flexibility" so that "disadvantages of piecemeal and final judgment appeals might both be avoided"). Regardless of which approach is adopted, the decision to permit interlocutory appeal is firmly within the district court's discretion. *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 405 n.9 (2004).

This Court agrees with Chesapeake that the application of the statute of frauds is material to this case. However, pursuant to this Court's discussion of Chesapeake's Motion to Amend, the Court finds that the question of whether the Assignment exhibits can constitute part of the agreement reached by the parties is intimately connected to as

of yet unresolved factual issues. While this Court held that the Assignment exhibits were not *per se* excluded as a matter of law from the agreement, the Court re-emphasizes that the facts surrounding the Assignment exhibit discussions may nonetheless indicate that they should be so excluded. Chesapeake evidently disagrees with this Court's application of the statute of frauds to this case. However, as discussed further above, this Court's Order does not present such a novel or questionable application of the statute such that its decision should be subject to immediate review, before the Court has had the opportunity to rule on a complete factual account of how the negotiations between these parties took place. Moreover, that there remain factual questions on issues other than enforceability under the statute of frauds, namely the issues of unclean hands and promissory fraud, further counsels against certifying the Order for review at this stage. Chesapeake may, of course, appeal the Order following this Court's final determination.

### III.   MOTION FOR SUMMARY JUDGMENT

Still pending before this Court is Chesapeake's Motion for Summary Judgment on Preston's claim for promissory fraud (Doc. No. 46). At the hearing held on December 29, 2009, Chesapeake represented to this Court that it would be willing to waive summary judgment on this issue and submit it for decision at trial because of difficulties surrounding the scheduling of a deposition. Accordingly, this Court denies this motion without prejudice to refiling should the timeline or trajectory of this case materially change before trial.

### IV.   CONCLUSION

Chesapeake's Motion to Amend (Doc. No. 96) and Motion for Certification for Interlocutory Appeal (Doc. No. 98) are **DENIED**. Chesapeake's Motion for Summary

Judgment (Doc. No. 46) is **DENIED WITHOUT PREJUDICE**. A pre-trial conference will be held on Wednesday, March 10 at 1:30 pm to discuss all outstanding issues before trial.

    **IT IS SO ORDERED**.

    **SIGNED** this 5th day of March, 2010.

    KEITH P. ELLISON
    UNITED STATES DISTRICT JUDGE