**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **PRESTON EXPLORATION CO., et al,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| **VS.** | § | **CIVIL ACTION NO. H-08-3341** |
| | § | |
| **CHESAPEAKE ENERGY CORP., et al,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM AND ORDER**

Pending Before the Court is the Motion for Amended Findings and Judgment, and, In the Alternative, Motion for New Trial (Doc. No. 143) ("Motion to Amend") and the Motion to Alter Judgment (Doc. No. 144) of Plaintiffs Preston Exploration Company, L.P., PEC Partnership, T.S.C. Oil & Gas, Inc., and Frank Willis, III (collectively "Preston"). Defendants are Chesapeake Energy Corporation and GSF, LLC (collectively "Chesapeake"). After considering the parties' filings and the applicable law, the Court holds that the Motions should be denied.

## I. BACKGROUND

A detailed factual background of this case has been set forth in this Court's previous orders, and is incorporated herein. In considering a motion for reconsideration, a court "must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). In its Motion, Preston seeks to amend this Court's findings and judgment on several grounds. The Court will consider each one of these grounds in turn.

## II. ARGUMENTS

**A. Whether the Court Misdirected its Focus on the Finality of the Exhibits**

Preston argues that the finality of the Assignment Exhibits is immaterial to the ultimate question in this case: whether legally sufficient property descriptions of the leases to be conveyed are contained in the package of documents comprising the parties' agreement.

**1. Whether the Court erred in holding that the finality of the documents determined whether they could be incorporated into the parties' agreement**

Preston argues that this Court erroneously evaluated whether the Assignments and Exhibits to the Assignments had been finalized. According to Preston, it is sufficient that the Assignment Exhibits were in existence and complete at the time the parties executed the PSAs and were expressly incorporated therein. Preston maintains that there are no provisions in the PSAs or Texas law suggesting that the Assignment Exhibits had to be final in every respect. However, as the Court explained in its Order, the reason that "finality" was important with respect to the Assignment Exhibits was so that the Court could assess whether "the Emailed Exhibits corresponded to the Assignment Exhibits referenced within the language of the PSAs, such that they could be incorporated into the agreement under Texas law." (Doc. No. 138 at 12.) Section 12(b) of the PSAs states that "this agreement, together with the Exhibits attached hereto and the Assignment and other documents to be delivered pursuant to the terms hereof, shall constitute the complete agreement between the Parties . . ." (Pl. Exs. 27, 83, 84). Unless the Assignment Exhibits that were emailed to Chesapeake were the Assignment Exhibits to which the PSAs referred, or those that would be delivered with the Assignment on the day of closing, they

were neither referred to nor incorporated into the agreement under Texas law. Preston has made no argument that would cause this Court to revisit its holding on this point.

**2. Whether Chesapeake's Reasonable Belief as to the Finality of the Assignment Exhibits was important**

Chesapeake argues that the parties' minds were not required to meet over the Assignment Exhibits. However, as discussed by the Court in its previous orders, the law allows an unsigned documents to be read as part of an agreement only when the signature on one document can be imputed to all unsigned documents. *See Big Dog Logistics, Inc. v. Strategic Impact Corp.*, 312 S.W.3d 122, 133-34 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (relying on statute of frauds jurisprudence to conclude that a signed document could not serve to authenticate an attached unsigned list when it was possible that there was no agreement between the parties as to the content of the list); *Findley v. Hundley*, 252 S.W.2d 958, 962 (Tex. Civ. App.—Dallas 1952, no writ.) (holding that the minds of the parties must meet with respect to the subject matter of the agreement and all of them must assent to the same thing at the same time).

It is for this reason that that Court was required to consider whether Chesapeake's signature on the PSA could fairly be said to reflect its acquiescence to the contents of the Emailed Assignment Exhibits; it was this content that Preston sought to incorporate into the Agreement. While it is true that the contents in question were simply the book and page information that largely corresponded to each of the leases on the PSA Exhibits, to which Chesapeake indisputably did agree, the law is clear that, because this book and page information was outside the signed agreement, there must have been a "hook" on which this information could fairly and legally be incorporated into the agreement for purposes of the statute of frauds. *See Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex.

1968) (holding that an unsigned paper may be incorporated into an agreement only by reference in the paper signed by the person sought to be charged); *Gruss v. Cummins*, 329 S.W.2d 496, 500 (Tex. Civ. App.—El Paso 1959, writ ref'd n.r.e.) (holding that statute of frauds is not satisfied by an unsigned document unless the document signed by the person to be charged refers to all writings not so signed). The facts in this case did not establish that such a hook existed, because the evidence did not show that Chesapeake understood the Emailed Assignment Exhibits to be the agreed upon, finalized documents that would be delivered at closing and that were referred to within the signed PSAs.

Chesapeake argues that post-signing, post-closing title examination work does not render the signed executory contract non-binding. While the Court recognizes the correctness of this statement in cases where the signed agreement itself is statute of frauds compliant within its four corners, what is unique in this situation is that the contract itself, or the PSAs and their Exhibits, did not satisfy the statute of frauds. As a result, the Court was tasked with determining whether the Assignment Exhibits could have been brought in and incorporated into the contract through an express reference in order to make the contract enforceable. The Court concluded that the pre-closing due diligence that remained to be done after the PSAs were signed would have had a material affect on the Assignment Exhibits, or the list of leases to be conveyed from Preston to Chesapeake. As such, that remaining due diligence served to render the contract unenforceable, not because of the fact that there remained title curative work to be completed, but because the Emailed Assignment Exhibits could not be incorporated into the PSAs at the time they were signed in order to render them enforceable.

Moreover, as Chesapeake points out in its response, the due diligence that remained to be completed after the PSAs were signed was more than routine title curative work. Preston's obligation to extend certain lease terms was more significant than a simple title defect issue, as the evidence showed that this process could have significantly affected the list of the leases that would ultimately be conveyed to Chesapeake at closing, and the amount of money that would eventually change hands.

The Court understands, and fully appreciates, the distinction of a two-stage real estate transaction. The Court further recognizes that, had the PSAs and the Exhibits attached thereto constituted a binding contract in and of themselves, post-signing title curative work would have done nothing to alter the enforceability of the contract. Here, however, the post-signing due diligence did indeed affect the enforceability of the PSAs. The Court finds no reason to revisit its holding as to this issue.

**3. Whether Chesapeake's belief was reasonable**

Preston also argues that Chesapeake was not reasonable in its belief that the Assignment Exhibits were not final, because these Exhibits were prepared in anticipation of the October 7 closing that never occurred. However, this Court was persuaded by the testimony indicating that, because the focus Chesapeake's attention at the point at which the PSAs were signed was the data contained within the PSA Exhibits, and that Assignment Exhibits would have been examined and finalized only immediately before closing, the Court stands by its holdings. Preston offers nothing that legitimately calls this Court's conclusions into question.

**4. Whether Chesapeake's "lack of focus" was an excuse**

Preston further argues that, because the Emailed Assignment Exhibits were expressly incorporated into the parties' agreement and acknowledged as received prior to signing, under Texas law it does not matter that Chesapeake now claims that it did not focus on these Assignment Exhibits. However, this argument misses the mark. Chesapeake's lack of attention to the Emailed Assignment Exhibits in this case spoke to the issue of whether the Assignment Exhibits could be incorporated into the agreement in the first place. Because Chesapeake's signature on the signed PSAs did not manifest agreement to the unsigned Emailed Assignment Exhibits, it was clear that these documents were not finalized and referred to in the signed document such that their content was incorporated into the parties' agreement.

**B. Whether the Emailed Assignment Exhibits were Final**

Preston argues that it adequately demonstrated at trial that the Emailed Assignment Exhibits were final in all material respects. This Court held that the evidence presented at trial did not demonstrate that the Emailed Assignment Exhibits were final, because there remained significant due diligence processes on the part of both Chesapeake and Preston that would have, and did in fact have, a material effect on what leases would actually be conveyed from Preston to Chesapeake at closing, and because the parties' focus at the time the PSAs were signed was on only the PSA Exhibits. While the Court understands Preston's position, it will not how revisit its finding.

**C. Whether the Court Erred in Denying Specific Performance of the Whole Agreement**

Preston argues that any lack of finality in the agreements can, at most, be applied only to the 45 leases on which Chesapeake asserted colorable title defects, and this should not affect Preston's right to specific performance for the balance of the

agreements. However, the Court is unpersuaded by this argument. The lack of finality as to the Assignment Exhibits was dispositive because it determined whether they could be incorporated into the PSAs at all, which, in turn, determined whether these agreements could be specifically enforced. Without finality, there is no incorporation, and with no incorporation, the agreement in its entirety cannot be enforced because it is statute of frauds deficient. Accordingly, the Court rejects this argument as a ground upon which it should revisit its ruling.

### D. Whether the Court Imposed a Standard for Real Property Description that is Far More Stringent and Rigid than Texas Law Requires

Preston argues that a property description is sufficient if the writing furnishes within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty. *AIC mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008). According to Preston, the Court incorrectly applied this standard to the facts of this case.

#### 1. Whether the Lease ID was sufficient as a reference of incorporation

Preston argues that this Court erred in holding that the Lease ID numbers within the PSAs could not be used to render the agreement statute of frauds compliant because the number requires extrinsic evidence before its significance can be ascertained. Preston relies on *AIC Management v. Crews*, 246 S.W.3d 640 (Tex. 2008) to support its position. As Chesapeake points out, however, the *AIC Management* decision "highlights the [c]ourt's willingness to read property descriptions in tax judgments alongside the property descriptions in related petitions and judgment rolls to identify the property conveyed, thus avoiding the inequity of erasing otherwise valid tax judgments at the

public's expense." *Id*. at 647 (citing *Willoughby v. Jones*, 251 S.W.2d 508 (Tex. 1952)). *AIC Management*, therefore, is a case that concerns references to prior tax petitions, HCAD records, and tax tract maps, all of which are public records that were referenced using ambiguous shorthand. By contrast, Preston is attempting to incorporate its own private business records into the PSA, through a Lease ID number that it created and assigned to a file. In contrast to the reference at issue in *AIC Management*, these identifiers have no significance absent Preston's assertion and the testimony of a Preston employee. The nature of the ambiguity in these two cases is therefore materially distinct. As such, the Court will not revisit its conclusion that these identifiers cannot be used to render the PSAs statute of frauds compliant.

**2. Whether the Court could have considered other materials prepared by the parties**

Preston argues that the Court erroneously failed to consider extrinsic evidence that conclusively establishes that both parties to the contract had in contemplation the same tract of land when they signed the PSAs. However, as this Court held in its previous Order, the appropriate inquiry under the statute of frauds is whether the contract furnishes within itself, or by express reference to another existing writing, the location and boundaries of the properties to be conveyed. *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex. 1972); *see Reiland v. Patrick Thomas Properties, Inc.*, 213 S.W.3d 431, 437-38 (Tex. App.—Houston [1st Dist.] 2006). That the parties may have understood what property was to be conveyed is therefore not dispositive to this Court's determination. *Rowson v. Rowson*, 275 S.W.2d 468, 470-71 (Tex. 1955) (noting that it is immaterial that the parties were contemplating the same property if the property description contained with the writing is insufficient); *Reiland*, 213 S.W.3d at 437 (noting that "[e]ven when

'the record leave little doubt that the parties knew and understood what property was intended to be conveyed, . . . the knowledge and intent of the parties will not give validity'" to an otherwise unenforceable contract (citing *Morrow*, 477 S.W.2d at 540)).

**3. Whether this Court's interpretation of *Long Trusts* was too narrow**

Preston disagrees with the Court's interpretation of *Long Trusts v. Griffin*, 222 S.W.3d 412 (Tex. 2006). The Court has acknowledged that *Long Trusts* was not directly on point in this case, as the property descriptions in that case were even more deficient than those at issue here. Thus, the Court appreciates why Preston takes issue with its holding. Nonetheless, after examining the relevant body of case law, this Court came to the conclusion that it understood to be most consistent with *Long Trusts* and Texas statute of frauds jurisprudence. The Court concluded that, without location information or an explicit reference to the public documents containing such information, the PSAs could not, as a matter of law, be statute of frauds compliant. *See Long Trusts*, 222 S.W.3d at 416 (extrinsic evidence may not be used to supply the location information of the property); *Reiland v. Patrick Thomas Properties, Inc.*, 213 S.W.3d 431, 437-38 (Tex. App.—Houston [1st Dist.] 2006); *Cheetah Gas Co. v. Chesapeake Louisiana, L.P.*, 2009 WL 416324, at *2 (S.D. Tex. Feb. 19, 2009) (citing *Reiland*, 213 S.W.3d at 437-38) (holding that public real property records, surveys, and similar documents can be considered only if they are attached to or referenced in the contract). It will not now revisit this ruling.

**4. Whether the Court's approach is inconsistent with the purpose of the statute of frauds**

Preston argues that this Court's hyper-formalistic application is inconsistent with the purpose of the statute of frauds. This Court does not disagree that a hyper-formalistic and archaic application of the statute of frauds is, in many instances, inconsistent with the practical purpose for which the rule was created. Nonetheless, Texas law has emerged on the more rigid end of this country's statute of frauds jurisprudence, and it is the duty of this court to be faithful to this law. As such, the Court will not revisit its ruling on this basis.

**E. Whether a Mutual Mistake Entitles Preston to Reformation**

Preston argues that the Court erred in failing to reform the parties' contracts because the PSA Exhibits' lack of recording information was due to mutual mistake. This Court has twice ruled that the Preston is not entitled to contract reformation, because Preston did not argue that the parties inadvertently neglected to include the boundaries or recording information within the PSA exhibits. (Doc. No. 93 at 18 ("Preston is not arguing that the parties inadvertently neglected to include the boundaries or recording information from the PSA Exhibits. Instead, Preston produces evidence to demonstrate that both parties thought that the agreed terms of the PSAs were enforceable.").) In its Motion, Preston now appears to be arguing that the recording information was inadvertently excluded from the PSA Exhibits due to formatting changes. However, as Chesapeake points out, prior to the Court's Final Judgment, Preston argued for reformation on the exclusive basis that the parties were mistaken in their belief that the agreement was enforceable. Therefore, Chesapeake is correct that Preston has not preserved this argument and cannot raise it for the first time after summary judgment, trial, and final judgment have been entered. *See Alvarado v. Tex. Rangers*, 2005 WL

1420846, *2 (W.D. Tex. June 14, 2005) (citing *Rosenzweig v. Azurix Corp*., 332 F.3d 854, 863-64 (5th Cir. 2003) (noting that a motion to alter or amend judgment cannot be used to raise arguments which could, and should, have been made before judgment issued)).

Moreover, the Court is unpersuaded by the evidence that the exclusion of the book and page information from the PSA Exhibits was in fact a mistake. Although book and page information was indeed exchanged between the parties over the course of their negotiations, at no point does the evidence conclusively demonstrate that the parties explicitly discussed or reached a consensus as to the inclusion of this information within the PSAs. In fact, the record reflects that both parties were satisfied with the form of the lease exhibits that were attached PSAs at the time it was signed, and neither expressed reservation on the basis of the exclusion of book and page information. The evidence does show that Preston and Chesapeake both believed they had an enforceable agreement. However, as noted in the Court's previous order, this does not fulfill the requirements of mutual mistake. *National Resort Communities, Inc. v. Cain*, 526 S.W.2d 510 (Tex. 1975); *see also Rocanville Corp. v. Natural Gas Pipeline Co. of America*, 823 F.2d 92, 94 (5th Cir. 1987) (holding that in order for a contract to be eligible for reformation, the mutual mistake "must concern the terms of the contract itself, not some other feature of the transaction").

**F. Whether the Court Erred in Failing to Apply the Partial Performance Exception**

Preston argues that the Court erred in failing to recognize that all of the elements of the partial performance exception are present in this case, because both parties performed at least a portion of their obligations under the terms of the PSAs. However,

Preston does not demonstrate in its Motion that the elements required for partial performance have been met, because Preston did not surrender possession of its properties. According to Texas courts, the elements necessary to relieve a contract for the sale of real property from the statute of frauds include: "(1) payment of the consideration; (2) surrender of possession; and (3) the making of valuable and permanent improvements on the land with the owner's consent." *Chambers v. Pruitt*, 241 S.W.3d 679, 687 (Tex. 2007) (finding that, although buyer made a down payment on the land, there is no evidence she paid the full purchase price). Mere payment of a deposit is not sufficient to establish consideration. Moreover, as this Court previously found, Preston does not meet the requirements of the partial performance exception even in the specific context of a seller attempting to enforce a real property contract against a buyer. (*See* Doc. No. 93 at 14 n.3.) As such, the Court will not revisit its ruling as to partial performance.

### G. Whether the Court Erred in Failing to Recognize the Promissory Estoppel Exception

Preston argues that the Court erred in holding in its earlier order that promissory estoppel was inapplicable because there was no existing statute of frauds compliant document that Chesapeake agreed to sign. In light of this Court's trial finding that the Emailed Assignment Exhibits were not finalized or mutually agreed upon documents, it now reaffirms its holding. (*See* Doc. No. 93 at 16 (citing *1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 29 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (noting that Preston failed to show that Chesapeake promised to sign a document that had already been prepared or whose wording had been agreed upon that would satisfy the statute of frauds).)

## III. CONCLUSION

The Court reiterates its appreciation for the impressive advocacy demonstrated by both sides in this case. However, Preston has not persuaded the Court that its findings and holdings were erroneous. Based on the analysis above, Preston's Motion for Amended Findings and Judgment, and in the Alternative, Motion for a New Trial (Doc. No. 143) is **DENIED**. Preston's Motion to Alter and Amend the Judgment (Doc. No. 144) is **DENIED.**

**IT IS SO ORDERED.**

**SIGNED** this 10th day of August, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE