UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PRESTON EXPLORATION COMPANY, LP, *et al.*,  §<br>§<br>*Plaintiffs*, §<br>§<br>v. §<br>§<br>GSP, LLC, *et al.*, §<br>§<br>*Defendants*. § | CIVIL ACTION H-08-3341 |

**ORDER AND FINAL JUDGMENT**

Pending before the court are (1) plaintiffs Preston Exploration Company, L.P., PEC Partnership, T.S.C. Oil & Gas, Inc., and Frank Willis, III's (collectively, "PEC") motion to enter judgment on remand (Dkt. 185); and (2) defendants GSF, L.L.C. and Chesapeake Energy Corporation's (collectively "Chesapeake") motion for additional findings of fact and conclusions of law and entry of judgment (Dkt. 190). Having considered the motions, the response and reply to PEC's motion, the Fifth Circuit's order remanding the case, other relevant documents in the record, and the applicable law, the court is of the opinion that PEC's motion (Dkt. 185) should be GRANTED and Chesapeake's motion (Dkt. 190) should be DENIED AS MOOT.

**I. BACKGROUND**

This case relates to the sale by PEC of certain oil and gas leases to Chesapeake. The parties executed three purchase and sale agreements ("PSAs") relating to these leases on October 7 and 8, 2008. Dkt. 138 (Findings of Fact and Conclusions of Law). The PSAs referenced and incorporated exhibits that had been sent to Chesapeake via email that contained recording information for the leases. Closing was set for November 7, 2008. *Id.* On October 14, 2008, Chesapeake sent three letters to PEC asserting claims of title defects. *Id.* Chesapeake also informed PEC that because PEC

Partnership did not have record title to the leases it was to convey, the price adjustment due to this title defect would be the purchase price of the leases in the amount of $101,111,270.26. *Id.* PEC responded to the defects and, with regard to the assertion that PEC Partnership did not have record title, PEC advised that Chesapeake would be given a copy of the assignment at closing on November 7, 2008. *Id.* PEC sent Chesapeake revised exhibits on November 5, 2008, advising that leases that could not be extended for at least one year, in accordance with the PSAs, had been removed from the exhibits, and detailing anticipated price adjustments. *Id.* On November 6, 2008, Chesapeake informed PEC that it would not be attending closing. *Id.* PEC filed this lawsuit on November 10, 2008. *Id.*

The original trial court,[1] after a bench trial, determined that the exhibits to the PSAs were not finalized and that thus there was no meeting of the minds with respect to the exhibits such that they could reflect the final terms of the parties' agreement. Dkt. 138. Thus, the court ultimately held that the PSAs were not enforceable agreements because there was insufficient description of the leases, without the finalized exhibits, to meet the statute of frauds. *Id.* PEC appealed.

In an opinion filed on February 1, 2012, the Fifth Circuit reversed the original trial court's finding with respect to the statute of frauds and remanded this case to the district court "for further proceedings in accordance with the opinion of this Court." Dkt. 177. In the opinion, the Fifth Circuit noted that "the trial court's factual finding that the assignment documents [in the exhibits] were not yet final is not disturbed" and that as of the date of closing "there was still some title work to be done before a final determination could be made as to the leases which would ultimately be

---

[1] This case was originally assigned to the Honorable Keith P. Ellison. Judge Ellison recused after the Fifth Circuit remanded the case, and the case was re-assigned.

conveyed." *Id.* Regardless of this lack of finality with regard to the title work, the Fifth Circuit determined that there was a "meeting of minds as to the subject of the contract," and it ordered that PEC "may obtain specific performance of those leases listed in Assignment Exhibit A of Exhibit C which include recording information." *Id.*

After remand, PEC filed a motion to enter judgment, arguing that because the Fifth Circuit has ordered specific performance of the PSAs, it "is entitled to an order of specific performance requiring Chesapeake to deliver to [PEC] the purchase price attributable to the Leases listed in Exhibit 2 and the recaptured 'Carried Amount' described in the PSA for PEC Partnership § 2(b), less the 10% deposit previously paid pursuant to PSA § 2(a), ('Remaining Purchase Price') and ordering [PEC] to deliver the Assignment, Bill of Sale and Conveyance documents described above upon confirmation of receipt of the Remaining Purchase Prices." Dkt. 185. PEC also asserts that it is entitled to pre-judgment interest, post-judgment interest, costs, and attorneys' fees. *Id.*

Chesapeake opposes PEC's motion, noting that the Fifth Circuit remanded for further proceedings and that "on remand the Court must determine the extent to which the leases identified in the PSAs survived the rigorous title defect procedure that the PSAs required before an assignment would occur." Dkt. 188. PEC argues, in reply, that Chesapeake made all of its arguments about title defects at trial and on appeal and that the Fifth Circuit still ordered specific performance—for the leases for which recording information existed. Dkt. 189. PEC contends that "[a]ll that remains for this Court to do on remand is implement the Fifth Circuit's mandate and enter a Judgment granting 'specific performance of those Leases.'" *Id.* (quoting the Fifth Circuit Opinion (Dkt. 177) at 9-10).

After the round of briefing on PEC's motion for entry of judgment, Chesapeake filed a motion for additional findings of fact and conclusions of law and entry of judgment. Dkt. 190.

3

Chesapeake notes that the Fifth Circuit specifically stated that "[i]t was clearly the intent of the parties that the assignments would not be finalized until such time as the title work was complete," and argues that "[n]ow that the Fifth Circuit has confirmed that the PSAs are enforceable under the statute of frauds, the Court must determine whether and when the parties' course of performing [the] procedure [for resolving title defects in the PSAs] triggered Chesapeake's duty to close on any of the subject leases." *Id.*  PEC argues that Chesapeake is simply attempting to re-litigate issues that were fully briefed, considered, and disposed of by the Fifth Circuit.  Dkt 194-1.  PEC asserts that the mandate rule and the law of the case require the court to order specific performance in conformance with the Fifth Circuit's instructions, which require that Chesapeake purchase the leases with recording information.  *Id.*  Chesapeake claims this would be merely "halfway" enforcing the PSAs because specific performance necessarily includes enforcement of the title defect procedure found in section 6 of the contract, and if one applies that section, after applying Chesapeake's deposit, Chesapeake does not owe PEC anything.  Dkt. 195.

## II. ANALYSIS

The second amended complaint specifically seeks "specific performance in accordance with Section 12(p) of the Purchase and Sale Agreement."  Dkt. 69.  Section 12(p) states:

> Default and Remedies: If the Closing does not occur due to the breach of the Seller, Buyer shall have the right to exercise any and all other remedies available to Buyer at law or in equity including, without limitation, specific performance of this Agreement.  If the Closing does not occur due to the breach of Buyer, Seller shall have the right to exercise any and all other remedies available to Seller at law or in equity including, without limitation, specific performance of this Agreement, Seller and Buyer acknowledge and agree that: (A) that the Properties are unique; and (B) monetary damages will not be adequate compensation for any loss incurred by reason of any breach

4

> of obligations described in this Agreement. In addition, each Party hereby waives in any action for specific performance of any such obligation the defense that a remedy at law would be adequate.

Dkt. 188, App. 1. The evidence in this case indicates that the closing did not occur because Chesapeake—the Buyer—declined to attend. Thus, pursuant to section 12(p), since the Fifth Circuit has found that the PSAs are enforceable, PEC is entitled to specific performance of the PSAs. The Fifth Circuit ordered specific performance with regard to all leases in Assignment Exhibit A of Exhibit C that include recording information.

Chesapeake argues that the Fifth Circuit, in ordering "specific performance," did not mean that it was required to purchase all of the leases in Assignment Exhibit A of Exhibit C that include recording information because, as the Fifth Circuit acknowledged, not all of the assignment documents were finalized as of the date of the execution of the PSAs. Chesapeake notes that

> Specific performance is awardable only to the extent that a contract has been breached. To prove breach of contract, [PEC] must prove (1) the existence of a valid contract, (2) performance or tendered performance by [PEC], (3) breach of the contract by Chesapeake, and (4) injury sustained by [PEC] as a result of the breach. Likewise, an award of specific performance requires that [PEC] prove (1) its own compliance with the PSAs, including tender of performance, and (2) that it was ready, willing and able to perform at all relevant times.

Dkt. 190 at 23 (footnotes omitted). Chesapeake argues that PEC "has not met these elements with respect to those leases that Chesapeake timely and properly defected, without acknowledgment of cure from [PEC]." *Id.* However, the Fifth Circuit ordered that "[PEC] may obtain specific performance of those leases listed in Assignment Exhibit A of Exhibit C which include recording information." Dkt. 177 at 9-10. Because the Fifth Circuit ordered specific performance with regard to these leases, it impliedly found the elements that Chesapeake sets forth satisfied. Clearly, the Fifth Circuit believed, having considered all of Chesapeake's arguments, that Chesapeake breached

5

the contract.  While Chesapeake would have been entitled to all of the benefits of the title defect procedure listed in the contract had it followed the terms of the contract, it must accept the leases listed in Assignment Exhibit A of Exhibit C that include recording information as a consequence of its breach.  Accordingly, PEC's motion to enter judgment on remand (Dkt. 185) on the leases that include recording information is **GRANTED**, and Chesapeake's motion for additional findings of fact and conclusions of law and entry of judgment (Dkt. 190) is **DENIED AS MOOT**.

Upon the basis of the evidence in the record in this case, PSA purchase prices attributable to the leases listed on the PSA exhibits that include recording information on the Assignment Exhibits tendered to Chesapeake, and the recaptured "Carried Amount" described in the PSA for PEC Partnership § 2(b), less the 10% deposit previously paid pursuant to PSA § 2(a) ("Remaining Purchase Prices") are as follows:

| | | |
|---|---|---|
| 1. | Preston Exploration Company, L.P. PSA | $ 6,571,191.45 |
| 2. | PEC Partnership PSA | $ 88,528,402.54 |
| 3. | T.S.C. Oil & Gas, Inc. and Frank Willis PSA | $ 5,713,494.43 |

This court notes that in compliance with the PSAs, Preston Exploration Company, L.P., PEC Partnership, and T.S.C. Oil & Gas, Inc. and Frank Willis, III have executed and tendered Assignment, Bill of Sale, and Conveyance documents conveying all right, title, and interest in the leases that are covered by their respective PSAs and this judgment.

PEC is entitled to recover pre-judgment interest at the rate of 5% on the sums ordered to be paid in this judgment.  *See Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 415 (5th Cir. 2011) (noting that there is a floor interest rate of five percent on pre-judgment interest under Texas law); *Am. Int'l Trading Corp. v. Petroleos Mexicanos*, 835 F.2d 536, 541 (5th Cir. 1987) ("[A]n equitable

award of prejudgment interest should be granted to a prevailing plaintiff in all but exceptional circumstances."). The amount of pre-judgment interest to which the plaintiffs are entitled, calculated from November 10, 2008 until July 10, 2012,[2] is as follows:

1. Preston Exploration Company, L.P.:   $ 1,204,418.27

2. PEC Partnership:   $ 16,226,164.80

3. T.S.C. Oil & Gas, Inc. and Frank Willis:   $ 1,047,213.07

Further, as the prevailing parties, PEC is entitled to recover reasonable and necessary attorneys' fees and costs, and all sums awarded in this case will bear post-judgment interest at the lawful rate. *See* 28 U.S.C. § 1961 (post-judgment interest); Fed. R. Civ. P. 56(d) (setting forth procedures for awarding attorneys' fees and costs); Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 2008) ("A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract.").

### III. CONCLUSION

In accordance with the Fifth Circuit's opinion filed on February 1, 2012 and judgment filed on March 14, 2012, the court hereby **ENTERS JUDGMENT** in favor of plaintiffs Preston Exploration Company, L.P. PSA, PEC Partnership PSA, and T.S.C. Oil & Gas, Inc. and Frank Willis PSA.

---

[2] PEC submitted calculations for pre-judgment interest as of May 31, 2012, and noted that the daily interest rate adjustments are $900.16 for Preston Exploration Company, L.P., $12,127.18 for PEC Partnership, and $782.67 for T.S.C. Oil & Gas, Inc. and Frank Willis, III. *See* Dkt. 185. Chesapeake did not respond to these figures, so the court relied on them in calculating the pre-judgment interest as of the date of this judgment–July 10, 2012.

It is therefore **ORDERED, ADJUDGED, and DECREED** that Chesapeake failed to perform the PSAs made the subject of this case and is liable to PEC for breach of contract. PEC is entitled to specific performance of the PSAs, excepting only Chesapeake's obligation to purchase the leases that were listed in the PSA Exhibits but not identified by corresponding recording information in the Assignment Exhibits tendered to Chesapeake.

The excluded leases, referred to by Lease Id Numbers contained in the PSAs, are as follows:

    Beckv NBG 021-06
    Beckv TXU 019-06
    Beckv SBG 028-06
    Beckv SBG 030-01
    Beckv SBG 031-01

In all other respects, this court **ORDERS** specific performance of the PSAs. In particular, it is **ORDERED, ADJUDGED, and DECREED**

1. That on or before July 31, 2012, Chesapeake shall wire transfer the above-described Remaining Purchase Price for the Preston Exploration Company, L.P. PSA equal to the sum of $ 6,571,191.54 in immediately available United States funds into a bank account to be designated in writing by Preston Exploration Company, L.P.;

2. That upon written bank confirmation of the receipt and availability of the sum of $ 6,571,191.54 from Chesapeake, Preston Exploration Company, L.P. shall deliver to Chesapeake the Assignment, Bill of Sale and Conveyance document executed by Preston Exploration Company, L.P.;

3. That on or before July 31, 2012, Chesapeake shall wire transfer the above-described Remaining Purchase Price for the PEC Partnership PSA equal to the sum of $ 88,528,402.54 in

immediately available United States funds into a bank account to be designated in writing by PEC Partnership;

4.     That upon written bank confirmation of the receipt and availability of the sum of $ 88,528,402.54 from Chesapeake, PEC Partnership shall deliver to Chesapeake the Assignment, Bill of Sale, and Conveyance documents executed by PEC Partnership;

5.     That on or before July 31, 2012, Chesapeake shall wire transfer the above-described Remaining Purchase Price for the T.S.C. Oil & Gas, Inc. and Frank Willis, III PSA equal to the sum of $ 5,713,494.43 in immediately available United States funds into a bank account to be designated in writing by T.S.C. Oil & Gas, Inc. and Frank Willis, III; and

6.     That upon written bank confirmation of the receipt and availability of the sum of $ 5,713,494.43 from Chesapeake, T.S.C. Oil & Gas, Inc. and Frank Willis III shall deliver to Chesapeake the Assignment, Bill of Sale, and Conveyance documents executed by T.S.C. Oil & Gas, Inc. and Frank Willis III.

It is further **ORDERED, ADJUDGED, and DECREED** that plaintiffs have and recover from Chesapeake pre-judgment interest as follows:

| | | |
|---|---|---|
| 1. | Preston Exploration Company, L.P.: | $ 1,204,418.27 |
| 2. | PEC Partnership: | $ 16,226,164.80 |
| 3. | T.S.C. Oil& Gas, Inc. and Frank Willis: | $ 1,047,213.07 |

It is further **ORDERED, ADJUDGED, and DECREED** that plaintiffs shall have and recover from Chesapeake post-judgment interest on all sums awarded or directed to be paid in this judgment pursuant to 28 U.S.C. § 1961 at a rate of 0.21%. Post-judgment interest is to be calculated daily and compounded annually from the date of this judgment until paid.

9

Pursuant to Federal Rule of Civil Procedure 54(d), the court **ORDERS** that plaintiffs shall recover attorneys' fees and costs in an amount to be determined at a later date. PEC is hereby **ORDERED** to submit a memorandum and supporting documentation of their fees and costs to the court within 30 day of the date of this order. Chesapeake may respond to the memorandum within 20 days of its submission.

This is a **FINAL JUDGMENT**.

Signed at Houston, Texas on July 10, 2012.

Gray H. Miller
United States District Judge