UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PRESTON EXPLORATION COMPANY, LP, *et al.,* | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-08-3341 |
| | § | |
| GSP, LLC, *et al.,* | § | |
| | § | |
| *Defendants*. | § | |

**Order**

Pending before the court is plaintiffs Preston Exploration Company, L.P., PEC Partnership, T.S.C. Oil & Gas, Inc., and Frank Willis, III's (collectively, "Preston") renewed motion for attorneys' fees.[1]   Dkt. 229.   Defendants GSF, L.L.C. and Chesapeake Energy Corporation (collectively, "Chesapeake") have filed a response opposing the motion.  Dkt. 236.  After reviewing the motion, response, related documents in the record, and applicable law, the court finds that Preston's motion should be GRANTED IN PART AND DENIED IN PART.

**I. BACKGROUND**

This case relates to certain oil and gas leases that Preston contracted to sell to Chesapeake via three purchase sale agreements ("PSAs").  Dkt. 138.  Chesapeake asserted various title defects

---

[1]   The court denied Preston's original motion for attorneys' fees (Dkt. 208) without prejudice. Dkt. 221.  Preston incorporates the substance of its original motion, contained at docket entry 208, into its renewed motion.  *See* Dkt. 229.  Chesapeake also incorporates its original response (Dkt. 213) and its surreply to Preston's original reply (Dkt. 219) into its response to Preston's renewed motion.  *See* Dkt. 236.

that it claims Preston failed to cure.  *Id.*  Closing was set for November 7, 2008, but Chesapeake failed to attend closing.[2]  *Id.*

Preston filed a breach of contract claim against Chesapeake on November 10, 2008.  Dkt. 1. Chesapeake asserted a counterclaim for money had and received on January 12, 2009.  Dkt. 10.  In April, 2009, Preston amended its complaint to add claims for reformation and promissory fraud or fraud involving real estate.  Dkt 18.  The parties moved for summary judgment, and in November 2009, the court denied Preston's motion for summary judgment, granted Chesapeake's motion for summary judgment, and dismissed Preston's claim for specific performance based on Chesapeake's statute of frauds defense.  Dkt. 44.

The court held a bench trial on the remaining claims on March 22-24, 2010, and Preston re-urged its previous arguments.  Dkt. 138.  Preston asserts that it had essentially abandoned its fraud claim by this point.  Dkts. 208, 215-1.  The court concluded that the documents that Preston asserted constituted the agreement in this case did not contain sufficient information to render the agreement compliant with the statute of frauds and entered final judgment in favor of Chesapeake.  Dkt. 138. It entered judgment in favor of Preston on Chesapeake's counterclaims.  *Id.*

Preston filed an appeal.  Dkt. 147.  On appeal, the Fifth Circuit held that the documents at issue contained sufficient legal description to meet the statute of frauds and that Preston "may obtain specific performance" of certain leases.  Dkt. 177.  The Fifth Circuit remanded the case back to the court "for proceedings consistent with [the] opinion."  *Id.*

The parties disagreed as to how to proceed after the case was remanded.  Preston moved for entry of judgment in its favor, arguing that the Fifth Circuit ordered specific performance and that

---

[2]  For a more detailed factual background, see docket entry 221.

the court should therefore enter judgment in its favor. Dkt. 185. Chesapeake disagreed, arguing that the Fifth Circuit did not hold that Preston was *entitled* to specific performance and that the court needed to enter additional findings of fact and conclusions of law. Dkts. 188, 190. The court originally granted Preston's motion to enter judgment and denied Chesapeake's motion for additional findings of fact and conclusions of law as moot. Dkt. 199. The court held that Preston could obtain specific performance of the leases outlined by the Fifth Circuit. Dkt. 199. It also noted that Preston was entitled to attorneys' fees and ordered it to submit briefing on the issue. *Id.* Both parties submitted extensive briefing relating to attorneys' fees. Dkts. 208, 213, 215-1, 219.

Chesapeake moved for a new trial, arguing that the court misinterpreted the Fifth Circuit's order. Dkt. 207. The court granted the motion for a new trial and entered additional findings of fact and conclusions of law. Dkt. 221. The court determined that Preston had been ready, willing, and able to perform the PSAs at the closing date and that Chesapeake breached the PSAs by failing to attend closing. *Id.* The court thus held that Preston was entitled to specific performance of all the leases for which it has recording information. *Id.* It also again noted that Preston was entitled to reasonable attorneys' fees and costs, and requested updated briefing on the fees issue. *Id.* The parties have submitted updated briefing, which provides information about attorneys' fees incurred after the first judgment for specific performance. Dkts. 229, 236. The court now considers both the original briefing, all the documents submitted in support of or response to the original motion, and the updated briefing.

## II. Legal Standard

"State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Here,

Preston's breach of contract claim was governed by Texas law, and Preston is entitled to an award of attorneys' fees for the fees incurred prosecuting its breach of contract claim under Texas Rule of Civil Procedure section 38.001. Under this section, an award of reasonable fees to the party that prevails in a breach of contract action is mandatory, but the amount of reasonable fees is discretionary. *Fluorine on Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 866 (5th Cir. 2004). One method of calculating reasonable attorneys' fees under section 38.001 is the "lodestar" method. *See, e.g.*, *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008). Under Texas law, the "party applying for an award of attorney's fees under the lodestar method bears the burden of documenting the hours expended on the litigation and the value of those hours." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). To calculate reasonable attorneys' fees under the lodestar method, courts must first establish a lodestar fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). Texas courts determine reasonableness by applying the *Arthur Andersen* factors. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). These factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the expertise, reputation, and ability of the lawyer or lawyers performing the services; and

4

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* "[E]vidence of each of the *Andersen* factors is not required to support an award of attorney's fees." *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 706 (Tex. App.—Dallas 2008, no pet.). "The court can also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties." *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 318 (Tex. App.—Dallas 2009, pet. denied).

Once the court has determined the lodestar, it may accept the lodestar or adjust it up or down. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995); *El Apple I*, 370 S.W.3d at 761. "The lodestar method aims to provide a relatively objective measure of attorney's fees," and, to ensure this, trial courts "should obtain sufficient information to make a meaningful evaluation of the application for attorney's fees." *El Apple I*, 370 S.W.3d at 762. Here, the parties have provided substantial briefing on the issue.

Texas courts will often consider "the far greater body of federal court experience with lodestar and fee shifting" when assessing attorneys' fees. *Id.* at 765. In the Fifth Circuit, courts use the twelve *Johnson* factors to determine whether the lodestar rate should be adjusted. *La. Power & Light Co.*, 50 F.3d at 329. The *Johnson* factors are:

1) the time and labor required for the litigation;
2) the novelty and complication of the issues;
3) the skill required to properly litigate the issues;
4) whether the attorney had to refuse other work to litigate the case;
5) the attorney's customary fee;
6) whether the fee is fixed or contingent;
7) whether the client or case circumstances imposed any time constraints;
8) the amount involved and the result obtained;
9) the experience, reputation and ability of the attorneys;

5

10) whether the case was "undesirable";
11) the type of attorney-client relationship and whether that relationship was long-standing; and
12) awards made in similar cases.

*Id*. at 329 n.19 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), overruled on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939 (1989)). Both the Fifth Circuit and the Texas Supreme Court have noted that there is substantial similarity and overlap in the *Arthur Andersen* factors and the *Johnson* factors. *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir. 2000); *El Apple I*, 370 S.W.3d at 761.   A court should not consider any of the same factors that it has already considered when determining the lodestar amount to determine whether to adjust the amount using the *Johnson* factors.   *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993).   The court should also keep in mind when applying these factors that there is a strong presumption that the lodestar rate is reasonable.   *Saizan v. Delta Concrete Prods., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006).   "A district court must 'explain with a reasonable degree of specificity the findings and reasons upon which the award is based, including an indication of how each of the *Johnson* factors was applied.'"   *McClain*, 519 F.3d at 284 (quoting *Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990)).

## III. ANALYSIS

Preston seeks $2,888,258.90 in attorneys' fees, which it asserts are reasonable and were necessary.  Dkt. 229.  It also requests that the court award conditional attorneys' fees in the event that Chesapeake's appeal is unsuccessful.[3]  *Id.*  Chesapeake argues that Preston's rates are too high and that the hours billed were excessive.  Dkt. 236.  Chesapeake seeks a substantial reduction in

---

[3] Chesapeake filed a notice of appeal on June 21, 2013.  Dkt. 241.

recoverable attorneys fees and argues that Preston has not adequately justified conditional appellate fees. *Id.*

## A.      Reasonable and Necessary Fees

Preston argues that its request for $2,888,258.90 in attorneys' fees is reasonable in light of the judgement in this case, which exceeds $121 million . Dkt. 229.  The hourly rate Preston's counsel charged for partners ranged from $250 to $600, which averages to $407.03 per partner.  *Id.* The hourly rate for associates ranged from $185 to $440, averaging $224.27 per associate, and the hourly rate for legal assistants ranged from $90 to $145, averaging $132.84 per legal assistant.  *Id.* Preston notes that courts have found average partner rates up to $720 and average associate rates of up to $400 reasonable and necessary for complex litigation in Houston .  *Id.*  Preston points out that its counsel spent a total of 7,891.65 hours on this case, prior to June 30, 2012,[4] and that these hours are considerably less than those found to be reasonable in another case in the Southern District of Texas.  *Id.*  Preston attaches declarations of three lawyers on the case and one independent attorneys' fees expert, all of whom indicate that the fees are reasonable and in-line with the usual and customary fees charged in Houston for similar cases.  *Id.* & Exs.; Dkt. 229 & Exs.  Preston urges that the most important factors for the court to consider in determining if its fees are reasonable and necessary are the amounts involved and the success obtained, and that it prevailed and received a substantial judgment. Dkt. 229.  It points out that its fee request is less than 3% of the judgment, which it stresses is reasonable.  *Id.*; *see also* Dkt. 215-1.

---

[4] Preston's attorneys worked an additional 577.75 hours from July 1, 2012, through October 31, 2012.  Dkt. 229, attach. 3.

Preston admits that there is possibly some overlap in legal services since it used attorney teams from different firms, and it has reduced its total hours billed by 5% as a "billing judgment" reduction to eliminate the possibility that any alleged unproductive, excessive, or redundant hours are being sought. Dkts. 208, 229. It has additionally reduced its time billed prior to June 20, 2012 by 5%, which it adds to the 5% billing judgment reduction, to account for hours spent on its abandoned fraud claim. Dkt. 208. Thus, it reduces its total hours by 10% for the hours spent prior to June 20, 2012—7,891.65 has been reduced to 7,102.49. Dkt. 208. It has also reduced the total fees from July 1, 2012 through October 31, 2012 by 5%—from $234,100 to $222,395. Dkt. 229-12, Ex. 5.

Chesapeake argues that the court should substantially reduce Preston's fee award because the hours billed were excessive in light of the simplicity of tasks, redundant, unnecessary, or resulted from the case being overstaffed by overqualified veteran partners. Dkt. 236. Chesapeake additionally argues that the billing descriptions are insufficient to prove reasonableness of the hours expended. *Id.* Chesapeake points out that Preston chose to hire 38 attorneys and paralegals to prosecute this breach of contract case, implemented an extremely top-heavy staffing scheme with partners and senior attorneys performing 87% of the work, allowed its attorneys to bill for 841 conferences, and provided duplicative and excessive services. *Id.*

Chesapeake argues that a mere 5% reduction for "billing judgment" is insufficient to account for the excessive, duplicative, and unproductive work by Preston's attorneys in this case. Dkt. 213. Chesapeake requests that the court either refuse to award attorneys' fees for all of the examples of overstaffing, duplication or services, or excessiveness that it offers, or, alternatively, reduce the total

compensable hours by 25% to account for these factors and Preston's lack of billing judgment. Dkt. 213.

Chesapeake additionally argues that the 5% reduction proposed by Preston to account for the time pursuing its fraud claims and defenses is inadequate as (1) Preston spent time pursuing other claims for which it cannot recover attorneys' fees as well, such as promissory estoppel; and (2) Preston filed numerous court documents and discovery requests with regard to its fraud claim, and a significant portion of motions or responses not directly related to the fraud claim also addressed it.  *Id.*  Chesapeake thus argues that the hours expended should be reduced by 25% to account for time spent pursuing unrecoverable claims.  *Id.*  Chesapeake also argues that Preston's fees for travel time should be reduced by 50%, as this is a common practice in the Fifth Circuit.  *Id.*

### 1.    Hourly Rate

Chesapeake argues that Preston's case was overstaffed with a brigade of partners whose hourly rates were often in excess of $600 an hour.  Dkt. 213.  Preston argues that the court has wide discretion in determining whether fees are reasonable, with the most important factors being the amounts involved and the success obtained.  Dkt. 229.  Preston asserts that the requested fees here are less than 3% of the judgment, which it claims is entirely reasonable.  *Id.*  It asserts that a review of the docket demonstrates the complexity and contentiousness of this case and the necessity of the time expended by its experienced counsel.  Dkt. 229.  Preston claims that average hourly rates have been found reasonable in numerous Texas cases and points out that its attorneys' fee expert stated that the median rates were lower than those customarily charged and awarded to attorneys of the caliber involved in this case.  Dkt. 215, Ex. A; Dkt. 208-33.

Courts consider various *Johnson* or *Andersen* factors when determining the reasonable hourly rate, including the customary fee, the counsel's experience, reputation, and ability, and the time and labor required for the litigation. *Shipes*, 987 F.2d at 320. Here, the court agrees with Preston that the rates used by Preston in its lodestar calculations—$407.03/hour for partners, $224.27/hour for associates, and $132.84/hour for legal assistants—are reasonable in the Houston market in light of the complexity of this case and the experience, reputation, and ability of Preston's lawyers. *Cf. Miller v. Raytheon Co.*, __ F.3d __, 2013 WL 1845586, at *8 (5th Cir. May 2, 2013) ("The record shows that the reduced hourly rates of $577.50, $542.50, and $280 were reasonable, customary rates."); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 586 F. Supp. 2d 732, 781 & n.61 (S.D. Tex. 2008) (finding an average hourly rate of $630 for partners to be justified); *Coe v. Chesapeake Exploration, LLC*, No. 2:09-cv-290-TJW, 2011 WL 4356728, at *5 (E.D. Tex. Sept. 15, 2011) (finding hourly rates of $200 to $400 per hour per hour for attorneys and $175 per hour for a paralegal to be reasonable); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 448 n.64 (S.D. Tex. 1999) (finding rates ranging from $100 to $544 per hour with an average rate of $260 per hour reasonable). The actual hourly rates per partner ranged from $250 to $600 per hour. *See* Dkt. 208-33. The expert on attorneys fees, who has been practicing in Harris County, Texas, since 1978, pointed out that the most expensive hourly rate, $600, was reasonable for the partner that charged that rate given his thirty-eight years of experience trying complex cases and his outstanding reputation in the community. *Id.* He noted that the hourly rates charged by partners in this case "are consistent with the hourly rates charged by lawyers of similar experience practicing at [his] firm," Beck Redden, "and at other firms in Houston, Texas in similar cases." *Id.* Additionally, he points out that the average hourly rates for lawyers and paralegals are consistent with the rates listed in the

*National Law Journal* as the prevailing hourly rates in the Houston legal community. *Id.*  The *NLJ* was relied upon by Judge Harmon in the *Enron* case. *See In re Enron*, 586 F. Supp. 2d at 781.

Chesapeake argues that the court should not rely on the *NLJ* rates as "this case is not *Enron*," and in fact "not even a case involving a novel issue of law or fact."  Dkt. 236.  The court, however, disagrees to the extent Chesapeake is suggesting that this was a simple case and that Preston should have hired less experienced and reputable lawyers with lower fees, as this case was, in fact, quite complex.  This is evidenced by only a cursory review of the docket.  This was a difficult case involving a substantial sum of money, and it warranted hiring the prestigious firms that worked on it.  The court believes, taking into consideration not only the declarations Preston submitted but also its own experience, that the rates charged are appropriate. *Cf. Kondos v. Allstate Tex. Lloyds*, No. 1:03-CV-1440, 2005 WL 1004720, at *18 (E.D. Tex. Apr. 25, 2005) (noting that "the judge can draw on his or her own expertise in [the] area" when determining the reasonableness of fees); *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 802 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("We note further that, in reviewing an attorney's fee award for excessiveness, we may draw upon our common knowledge as justices of the court and our experience as lawyers and judges.").

### 2.   Billing Judgment

Chesapeake argues that Preston did not prove that it exercised billing judgment.  Dkt. 213. A plaintiff seeking attorneys' fees must also show that its attorneys exercised "billing judgment" by showing the reasonableness of the hours billed. *Saizan*, 448 F.3d at 799.  "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant. . . . The proper remedy for omitting evidence of billing judgment does not include a

denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." *Id.*

### a. Overstaffing with Overqualified Attorneys

Chesapeake asserts that Preston has not met its burden of showing it was reasonable and necessary to predominately staff its case with senior partners and for those attorneys to provide overlapping services and engage in an exorbitant amount of conferences. Dkt. 213.  Chesapeake argues that Preston's attorneys and paralegals billed for time spent performing purely clerical or non-substantive legal tasks and that Preston's attorneys spent considerable time reviewing each other's work, and partners often did work that was more suited for an associate or even a paralegal. *Id.*

Preston acknowledges the insufficiency of billing judgment and suggests that the court reduce the award by 5%.  Dkt. 208.  Preston argues that it was not over-prepared, merely thorough.  Dkt. 215, Ex. A.  It points out that while there were numerous partners on the case, some of the partners spent only a minimal amount of time to lend expertise to briefing. *Id.*

Chesapeake, however, points to several examples of Preston's lack of billing judgment and urges that a 5% reduction is not enough.  Dkt. 213.  Chesapeake cites a billing description for "compar[ing] trial exhibits to . . . originals to ensure no errors in copying" as an example of billing time for clerical work. *Id.*  Chesapeake also points out that partners billed time for preparing trial notebooks and searching Pacer. *Id.*  Chesapeake notes that Preston's attorneys expended substantial time in conferences with each other, as there were 841 entries relating to conferences or meetings with other attorneys on the time sheets. *Id.*  It argues that Preston's own expert acknowledged that there was some overlap due to the number of lawyers involved. *Id.* (citing Dkt. 208-33).

The court agrees that there are numerous instances of redundant work by Preston's numerous attorneys and that the person performing work was often overqualified.  For instance, after three

partners drafted, reviewed, and even cite-checked the appellate brief, it was passed back and forth

among trial and appellate partners several times.  *Id.* (citing Dkt. 213, Exs. F, G, I).[5]  Associates

spent time checking trial exhibits for errors, and partners billed time for preparing trial notebooks

and "organizing documents."[6]  The court finds that the 5% reduction suggested by Preston is

insufficient to account for this lack of billing judgment.

> ### b.    Vague Billing Entries

Chesapeake also argues that the descriptions in numerous billing records are insufficient for

the court to determine the amount of hours reasonably expended.  *See* Dkt. 213 & Exs. A-M.  With

regard to this complaint, the court has reviewed unredacted copies of the billing records, which

Preston submitted for *in camera* review, and finds, for the most part, that the entries are not vague.

However, there are some entries that do not have sufficient descriptions given the length of time

spent on the activity.  For instance, on March 16, March 18, and March 19, 2010, partner TAC spent

9.5, 8.0, and 9.25 hours, respectively, on "various activities in preparation for trial."  On March 20

---

[5]  Partner JRT described the 8.8 hours he billed on this case on March 25, 2011 as follows: "Continue process of review, standardize, cite check and comment on draft Brief of Appellants." Dkt. 213, Ex. F at 10.  He spent 5.8 hours the next day doing the same thing.  *Id.*  On April 8, 2011, JRT spent 6.5 hours doing the following: "Incorporate reviewers' comments in draft brief; conduct record and Westlaw research for same; continue filling in blank record cites in draft."  *Id.* at 13.  He continued doing the same thing for 5.8 hours the next day.  *Id.*  There is no reason a lower-paid associate could not conduct Westlaw research and find the appropriate material in the record.  On July 1, 2011, partner RDT spent time cite checking the draft of the appellant's reply brief.  Dkt. 213, Ex. I at 6.  Again, an associate or paralegal should be cite checking—not a highly paid partner.

[6]  For example, on March 17 and 18, 2010, DDC spent 2.25 hours and 4.5 hours, respectively, comparing trial exhibits to originals to ensure that there were no errors in copying.  This is a clerical task for which Preston cannot recover fees.  On March 20, 2010, partner RS billed time for preparing trial notebooks, which is clearly a clerical task.  Both partners and associates also billed substantial time for "organizing documents," which the court also views as a clerical task.  *See, e.g.*, Dkt. 208-6 at PX129-044; Dkt. 208-9 at PX157-016; Dkt. 208-23 at Cunningham Darlow 000003; Dkt. 208-5 at Adams and Reese 000002.

and 21, the same partner spent 7.0 and 5.5 hours working on this case, and he described the time

spent merely as "trial preparation." *Id.* While the court is aware that substantial time is needed to

prepare for trial, it believes the description "trial preparation" is too vague.

     **c.**     **Travel Time**

     Chesapeake argues that Preston's fees for travel time should be reduced by 50% as it is

common practice in the Fifth Circuit to reduce the billing rate for travel time. Dkt. 213 at 19 &

n.124 (citing specific examples of travel time billed). Courts in the Fifth Circuit often reduce

compensable hours for travel. *See In re Babcock & Wilcox Co.*, 526 F.3d 824, 828 (5th Cir. 2008)

(collecting cases); *see also Lewallen v. City of Beaumont*, No. 1:05-CV-733-TH, 2009 WL 2175637,

at *10 (E.D. Tex. Jul. 20, 2009) ("In the fee-shifting context, compensating travel time at 50% of

actual time is a common practice within the Fifth Circuit."). The court has reviewed the time entries

cited by Chesapeake, and it does not appear that the attorneys were performing other work for

Preston while traveling. The court thus believes a reduction in the number of hours billed for travel

is appropriate. However, rather than seeking out every travel entry and reducing the time by 50%,

the court's overall deduction for billing judgment takes into account Preston's failure to discount its

travel time.[7]

     **d.**     **Excessive Partner Billing After Reconsideration**

     Chesapeake asserts more objections with regard to the hours Preston's counsel billed after

the court reconsidered its initial judgment. *See* Dkt. 236. First, it notes that preparation of a bill of

costs is generally delegated to a secretary or paralegal, but in this case, several partners with

---

     [7]  Chesapeake also argues that Preston failed to document $141,716.00 in fees for
Cunningham LLC to account for work performed prior to March 16, 2010. Dkt. 213 at 12 & n.84.
Preston, however, provided detailed billing records for this time period with the unredacted records
it submitted for in camera review. Thus, the court will not deduct this amount from the award.

substantial experience performed tasks associated with the bill of costs. *Id.* For example, Chesapeake asserts that partner DD spent six days researching costs recoverable under a bill of costs, and that Adams & Reese partner RS spent four days researching this issue. Dkt. 236. The record reveals that both of these attorneys spent *portions* of six and four days, respectively, reviewing issues relating to the bill of costs, but neither attorney spent full days working on the bill of costs. *See* Dkt. 229-12. The court is not overly concerned with these billing entries. However, Chesapeake points out that there are thirty-two billing entries by *seven* partners relating to the three-page bill of costs. Dkt. 236. This is excessive. *See Lewallen*, 2009 WL 2175637, at *9 (substantially reducing the hours for preparing a fee petition because "'[f]ee applications do not typically involve novel or complex legal issues'" (citation omitted)). Certainly, a partner may need to oversee or look over the bill of costs, but it is excessive to have seven partners working on such a mundane matter. Chesapeake asserts that Preston billed approximately $90,000 to file a bill of costs that sought to recover $32,000 in costs. Dkt. 236. While the court finds this to be somewhat of an exaggeration since Preston's attorneys often grouped their billing entries (so all of the hours in each entry are not attributable to the bill of costs), it is still clear that an excessive amount of partner time was spent on this filing.

Chesapeake also argues that the partner time spent preparing the updated attorneys' fees motion was excessive, as there are sixty-five billing entries during the update period by partners TAC, DD, RDT, SV, CT, and RS, reflecting work on the original fees motion. Dkt. 236. The court agrees that there was excessive partner work on the motion. *See* Dkt. 229-12 (billing records for the update period).

Chesapeake next asserts that the court should drastically reduce Preston's fees relating to Chesapeake's supersedeas bond as six partners billed time reviewing and conferring about the bond,

and TAC, who charges $600 an hour, actually billed for research and review of authorities on supersedeas bonds five different times. *Id.* (citing Dkt. 236, Ex. 1); *see* Dkt. 229-12 (Cunningham Darlow billing records for July 2012). The court agrees that the number of partners working on the bond issue and the number of billing entries relating to this issue are excessive.

Chesapeake also argues that Preston should not be reimbursed for the hours it spent preparing its reply to Chesapeake's response to the motion for attorneys' fees and that it was excessive to use six partners to research, draft, and review Preston's response to Chesapeake's motion for a new trial. As for the reply, Chesapeake argues that it was Preston's own "imprudent fee application that necessitated" the reply. Dkt. 236. The court, however, finds it is common practice to file a reply in these cases and does not believe that the filing of the reply itself is unreimbursable. As for the response, while the court believes the issues were more complex than Chesapeake asserts, it does not believe it was necessary to staff the response with so many highly paid partners.

### e.    Amount of Billing Judgment Reduction

Preston argues that it took a 5% reduction of its fees for billing judgment to eliminate the possibility that any alleged unproductive, excessive, or redundant hours were being sought. Dkts. 208, 229. It provides authority in which courts have found a 5% reduction when plaintiffs failed to present evidence of billing judgment sufficient: *Champion v. ADT Security Services* and *Coe v. Chesapeake Exploration LLC*. Dkt. 229. In *Champion*, the federal district court in the Eastern District of Texas reduced an award by five percent because the plaintiff had not shown that it exercised billing judgment. *Champion v. ADT Sec. Servs.*, No. 2:08-CV-417-TJW, 2010 WL 4736908, at *6 (E.D. Tex. Nov. 16, 2010). This deduction covered unproductive, excessive, or redundant hours as well as inadequately documented time. *Id.* As far as hours spent doing clerical work, the court extensively reviewed the record and deducted $377 from the overall billing for

16

clerical work that was performed by attorneys or paralegals. *Id.* at *7.  The *Champion* defendant also argued that the case was overstaffed, but the court noted that there were 16 timekeepers, only 6 of whom were lawyers, and that this number was appropriate for such a complex case.  It thus did not reduce the lodestar for overstaffing and duplicative billing.  *Id.*

In *Coe v. Chesapeake Exploration, LLC*, the federal district court in the Eastern District of Texas found that billing judgment had not been exercised by the plaintiffs as the plaintiffs did not note a single minute that was written off as unproductive, excessive, or redundant.  *Coe*, 2011 WL 4356728, at *3.  The court thus reduced the fee award by 5%.  *Id.*  The court refused to reduce the award for vague and inadequate billing descriptions, as the unredacted records provided to the court were not vague or inadequate.  *Id.* at *4.  The court did, however, reduce the bill by $17,885 for clerical work, such as reserving hotel rooms.  *Id.*  The court refused to reduce the fee award for overstaffing and duplicative billing simply because more than one timekeeper attended depositions or meetings, as it found that it was reasonable in that case for more than one timekeeper to do so. *Id.*

While the court finds *Coe* and *Champion* persuasive, it believes that a larger reduction is warranted in this case.  Unlike *Coe* and *Champion*, in this case the court has found that there were too many partners working on aspects of the case that should have been staffed by associates or paralegals.  Courts have reduced fees up to 50% for billing judgment in light of factors such as nature and extent of the work involved, the issues involved, and the complexity of the work.  *See Peak Tech. Servs., Inc. v. Land & Sea Eng'g, LLC*, No. H-10-1568, 2012 WL 3234203, at *8 (S.D. Tex. Aug. 6, 2012) (Rosenthal, L) (determining that an award of 50% of the fees sought was "reasonable in relationship to the [*Andersen*] factors . . ., including the issues involved, the work required, and the result achieved"); *see also La. Power & Light Co.*, 50 F.3d at 336 (affirming a trial

court's reduction of 15% for overstaffing); *Saizan*, 448 F.3d at 800 (affirming a trial court's reduction of 10% for "vagueness, duplicative work, and not indicating time written off as excessive or unproductive"); *Devices, Inc. v. Senior Operations,* Inc., No. 3-08-CV-1264-BD, 2009 WL 5171746, at *1 (N.D. Tex. Dec. 29, 2009) ("[A]fter giving consideration to the relevant *Arthur Andersen* factors, particularly the degree of success achieved by plaintiff, the court determines that a twenty percent fee reduction is appropriate."). Here, the court finds, based on the first *Andersen* factor (the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly), that a reduction in recoverable hours of 20% is warranted since (1) partners performed many tasks that were more suited to associates or paralegals; (2) partners, associates, and paralegals billed for clerical tasks; (3) attorneys billed regular rates for unproductive travel time; (4) many billing entries are vague; and (5) while the court finds that this case was complex enough to have multiple firms and partners involved, the case was overstaffed with partners who often duplicated each other's efforts, particularly with regard to mundane tasks such as filing a bill of costs, which could easily have been handled by the main trial firm without review by partners at other firms.

### 3.    Segregation of Claims

Under Texas law, "if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Tony Gullo Motors, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). "Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313-14. Fees expended in efforts to overcome a defense or assert a counterclaim when overcoming the defense or proving

the counterclaim is necessary to recover on a contract claim are recoverable.  *Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007).

Chesapeake argues that Preston's compensable hours should be reduced to account for time spent advancing unrecoverable claims.  Dkt. 213.  Specifically, Chesapeake asserts that Preston cannot recover for fees expended for work spent on the reformation, promissory and statutory fraud, partial performance, and promissory estoppel claims and cannot recover for time spent working to defend against Chesapeake's counterclaim for money had and received.  *Id.*  It notes that under §38.001 Preston cannot recover its attorneys' fees for equitable claims, that its promissory estoppel and partial performance claims, if proved, were merely alternative theories of recovery, and that §38.001 does not award attorneys' fees for the successful defense of a contractual lawsuit.  *Id.* Chesapeake points out that Preston spent a lot of time attempting to recover for its fraud claim and defenses, including requesting and reviewing approximately 3,000 pages of additional documents related to the *Cheetah* litigation, which is another lawsuit against Chesapeake for fraud.  *Id.* Chesapeake points out that almost 40% of the pages in Preston's response to Chesapeake's cross motion for summary judgment pertain to Preston's equitable claims and defenses, and 25% of its reply is dedicated to non-contract claims and defenses.  *Id.*

Preston asserts that it has segregated its time between claims for which fees are recoverable and fees are not recoverable.  Dkt. 215, Ex. A.  It argues that the fees expended to pursue counterclaims and affirmative defenses need not be segregated because they were necessary to the recovery of the breach of contract claim.  *Id.*  Specifically, Preston suggests that it pursued its promissory estoppel and reformation claims as defenses to overcome Chesapeake's statute of frauds argument, and this all relates to the contract claims.  *Id.*  Preston agrees that it spent some time

pursing a fraud claim but notes that by the time this case went to trial, "the fraud claims were largely abandoned." Dkt. 208.

Preston's expert noted that it would be impossible to separate work performed defending the counterclaim from the work performed prosecuting the principal claim since both claims arose out of the same contractual issue. Dkt. 208-33.  He determined that Preston's lawyers would have spent 95% of the time they spent preparing this case even if there were no fraud claim or counterclaim—particularly since the fraud claim was not initially in the case and was not raised in trial or on appeal.  *Id.*  He asserts that a segregation of 5% of the total time and fees charged to account for unrecoverable fees is sufficient.  *Id.*  The court agrees with Preston's expert with regard to the segregation of fees issue.  The court will therefore reduce the total hours by 5% to account for any fees that have not been adequately segregated.

## B.     The Lodestar

From November 2008 through June 30, 2012, Preston's attorneys collectively spent a total of 7,891.65 hours on this case. Dkt. 208-33.  The court finds that the hours worked in this case by Preston's counsel are reasonable and necessary after taking a 20% downward adjustment for "billing judgment" and a 5% downward deduction for the segregation of attorneys' time between those claims for which attorneys' fees are recoverable and those for which they are not.  Preston's partners billed 6,744.50 hours, its non-partners, which include associates and special counsel, billed 705.2 hours, and its legal assistants billed 441.95 hours during this time period.  After reducing these hours by 25%, the court finds that 5,058.38 hours for partners, 528.9 hours for non-partners, and 331.46 hours for legal assistants is reasonable.

The hourly rates charged for partners' time in this case from 2008 to 2012 ranged from $250 to $600, and averaged $407.03 per hour.  The hourly rates for attorney non-partners ranged from

$185 to $440, and averaged $224.27 per hour.  Legal assistant rates ranged from $90 to $145, and averaged $132.84 per hour.  The court finds that those rates are reasonble hourly rates consistent with the prevailing market rate in this community.  The court thus calculates the lodestar for this time period as follows:

| Personnel | Reasonable Hours | Reasonable Rate | Total |
|---|---|---|---|
| Partners | 5,058.38 | $407.03 | $2,058,912.41 |
| Non-partners | 528.9 | $224.27 | $118,616.40 |
| Legal Assistants | 331.46 | $132.84 | $44,031.15 |
| TOTAL | | | $2,221,559.96 |

The amount of Preston's invoices for this time period is $2,962,071.00.  Dkt. 208-33.  If a flat reduction of 25% is taken off of the total invoiced amount for this time period to account for billing judgment and segregation, the result is $2,221,553.25.  Since this amount is slightly lower than the lodestar, the court finds that Preston is AWARDED attorneys' fees against Chesapeake in the amount of $2,221,553.25.

From July 1, 2012 to October 31, 2012, Preston's counsel spent a total of 577.75 hours on the case.  Dkt. 229-12.  The seven partners working on this case during this time period billed 437 hours, and the two paralegals billed 140.75 hours.[8]  Dkt. 229-12.  Preston paid $234,100.00 in attorneys' fees during this period.  The court finds that it is appropriate to also deduct 20% of the hours during this time period for billing judgment.  However, there is no need to adjust the hours for segregation, as the only claim at issue during this period was the contract claim.  Thus, after deducting 20%, the court finds that 349.6 hours for partners and 112.6 hours for paralegals or legal assistants is reasonable.

---

[8] No associates worked on this case during this time period.

The court notes that the actual average of the fees for partners and legal assistants during this time period was somewhat higher than the average fees during the initial time period. However, the court finds that it is appropriate to use the same average rather than adjusting upwards, as it has found the lower rate is reasonable.

| Personnel | Reasonable Hours | Reasonable Fees | Total |
|---|---|---|---|
| Partners | 349.6 | 407.03 | $142,297.69 |
| Legal Assistants | 112.6 | 132.84 | $14,957.78 |
| TOTAL | | | $157,255.47 |

Preston's actual fees of $234,100.00 minus 20% for billing judgment equals $187,280.00. This is more than the lodestar amount, so Preston is AWARDED the lodestar amount of $157,255.47 for this time period.

Combining the attorneys' fees awards for the two time periods, the court finds that Preston is AWARDED fees against Chesapeake in the amount of $2,378,815.43. Given the substantial judgment in this case, the court finds that Preston's attorneys' fee recovery of less than 3% of the judgment is reasonable and necessary. Chesapeake is therefore ORDERED to pay Preston's attorneys' fees in the amount of $2,378,815.43.

**C.  Conditional Appellate Attorneys' Fees**

Chesapeake has already filed a notice of appeal. Dkt. 241. Preston requests that the court grant appellate fees conditioned on an unsuccessful appeal in the amount of $425,000.00. Dkt. 208. They argue that this rate is consistent with those previously charged and comparable to rates charged by attorneys of comparable experience and expertise in similar cases. *Id.* They provide declarations from three partners that have worked on this case as well as the declaration of an outside expert. *Id.* F. Lee Butler states that the reasonable attorneys' fees for services Adams & Reese would provide

22

during an appeal are $50,000.  Dkt. 208-1 ¶ 20.  Tom Alan Cunningham states that reasonable fees for the work Cunningham Darlow would provide during an appeal would be $75,000.  Dkt. 208-20 ¶ 21.  Roger Townsend of Alexander, Dubose & Townsend LLP states that the fees incurred for his firm's services in the event of an appeal would be $300,000.  Dkt. 208-26 ¶ 20.  Preston's attorneys' fees expert Murray Fogler notes that, based on his experience and work with appellate specialists in the past, the reasonable attorneys' fees and expenses for an appeal to the Fifth Circuit would be $425,000.  Dkt. 208-33 ¶ 36.

Chesapeake argues that the request of $425,000 in conditional attorneys' fees is excessive and should be denied.  Dkt. 213.  Chesapeake asserts that Preston has not shown that this amount is reasonable, particularly given the fact that Preston's counsel is already well versed on the record in this case due to the previous appeal.  *Id.*  Chesapeake also argues that Preston's expert, Murray Fogler, is "a self-described 'trial lawyer,' not an expert in appellate practice."  Dkt. 236 at 18.  It notes that the other declarations supporting the request are merely conclusory statements from Preston's own interested attorneys.  *Id.*

Generally, courts may award conditional attorneys' fees for an unsuccessful appeal.  *See Keith v. Keith*, 221 S.W.3d 156, 169 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("The trial court's award of attorney's fees may include appellate attorney's fees.").  "However, there must be evidence of the reasonableness of fees for appellate work to support the award of appellate attorney's fees."  *Id.*  Here, while Preston has been involved in a previous appeal in this case and likely has a good idea as to how much the appellate fees will be, it merely provides the court with a dollar figure rather than providing an estimate as to how many hours the firms estimate the appeal would take or the fees of the individuals who the firms anticipate will be working on the matter.  The blanket request for $425,000 without more information in not sufficient to show these fees would be

reasonable.  Preston's request for conditional attorneys' fees is therefore DENIED without prejudice to request additional fees if Chesapeake is unsuccessful in its appeal.  *Cf. Amlin Corp. Member, Ltd. v. Logistics Grp. Int'l, Inc.*, No. H-09-2695, 2011 WL 3271335, at *10 (S.D. Tex. Jul. 28, 2011) (Rosenthal, J.) (denying a request for conditional attorneys' fees without prejudice when the party requesting the fees merely provided an affidavit requesting a dollar amount without providing "the number of hours or otherwise provid[ing] a basis for the amounts requested").

## IV. CONCLUSION

Preston's renewed motion for attorneys' fees (Dkt. 229) is GRANTED IN PART AND DENIED IN PART.  Preston is hereby AWARDED attorneys' fees in the amount of $2,378,815.43 for the reasons described above.  Preston's request for conditional appellate fees is DENIED WITHOUT PREJUDICE.

It is so ORDERED.

Signed at Houston, Texas on June 25, 2013.

_____
Gray H. Miller
United States District Judge

24